[Cite as *Simms v. Penn Natl. Gaming, Inc.*, 2022-Ohio-388.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Simms, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 21AP-185 |
| v. | : | (C.P.C. No. 18CV-10026) |
| Penn National Gaming, Inc., | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 10, 2022

**On brief:** *Plymale & Dingus, LLC*, and *M. Shawn Dingus*, for appellant. **Argued:** *M. Shawn Dingus*.

**On brief:** *Reminger Co., LPA*, and *Brandon Abshier*, for appellee. **Argued:** *Brandon Abshier*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Michael Simms, appeals the April 5, 2021 decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee, Central Ohio Gaming Ventures, LLC, dba Hollywood Casino Columbus,[1] on appellant's negligence claim. For the following reasons, we affirm that judgment.

---

[1] Appellant's December 3, 2018 complaint named Penn National Gaming, Inc. as the defendant. On December 19, 2018, the parties filed a written stipulation substituting Central Ohio Gaming Ventures, LLC, dba Hollywood Casino as the proper party defendant. The vast majority of the parties' trial court pleadings, as well as the trial court's April 5, 2021 decision and entry and the parties' briefing in this court, are styled with Penn National Gaming, Inc. as the defendant; however, pursuant to the parties' agreed stipulation, the proper party defendant is Central Ohio Gaming Ventures, LLC, dba Hollywood Casino.

{¶ 2} At approximately 2:00 p.m. on March 10, 2018, appellant and his girlfriend walked from the parking lot of the Hollywood Casino ("casino") to the sidewalk leading to the casino's main entrance. Appellant tripped and fell on an uneven portion of the sidewalk. On December 3, 2018, appellant filed a complaint alleging that appellee was negligent in failing to maintain the sidewalk in a reasonably safe condition and in failing to warn appellant of the danger presented by the uneven sidewalk. Appellant alleged that as a direct and proximate result of appellee's negligence, he suffered physical and emotional injuries.

{¶ 3} On July 5, 2020, appellee moved for summary judgment on two grounds: (1) the alleged hazard, a less than two-inch difference in elevation between adjoining portions of the sidewalk, was a minor defect for which appellee could not be held liable as a matter of law; and (2) the alleged hazard was an open and obvious danger for which appellee owed no duty to warn.[2]

{¶ 4} In support of its motion, appellee attached the July 1, 2020 affidavit of Molly Hegenbarth, the casino's risk/safety manager. Hegenbarth attested that prior to March 10, 2018, the casino had received no customer complaints regarding variations in the elevation of the sidewalk leading from the parking lot to the casino. (July 1, 2020 Hegenbarth Aff. at ¶ 3.) She further testified that subsequent to appellant's fall, she measured the variation in elevation at the point of the fall and determined it to be less than two inches. *Id.* at ¶ 4, 5.

{¶ 5} Appellee also submitted the testimony provided by appellant at his March 4, 2020 deposition. Appellee averred that he and his girlfriend arrived at the casino at approximately 2:00 p.m. on March 10, 2018. The two walked from the parking lot to the sidewalk leading to the casino's main entrance. As he was walking on the sidewalk, "something caught [his] foot," and he fell. (Mar. 4, 2020 Simms Dep. at 77.)

{¶ 6} Appellant asserted that he typically either looks straight ahead or down at the ground when he walks in order to avoid any potential defects or obstacles that might pose a danger; however, he could not recall if he was looking straight ahead or down at the ground prior to the time he fell. He testified that he "believe[d]" that he was watching where

---

[2] Appellee also argued that Penn National Gaming, Inc., as the parent company of Central Ohio Gaming Ventures, LLC, dba Hollywood Casino, could not be held liable for the alleged negligent actions of its subsidiary. However, by written notice filed August 6, 2020, appellee withdrew this argument, noting that it had mistakenly forgotten about the December 19, 2018 stipulation substituting Central Ohio Gaming Ventures, LLC, dba Hollywood Casino as the proper party defendant.

he was walking when he tripped on the sidewalk. *Id.* at 70. However, he also testified that "[o]nce you get on the sidewalk, you really don't pay attention." *Id.* at 67. Prior to the fall, he did not observe a crack in the sidewalk, nor did he observe that the sidewalk was uneven. At the moment he fell, he did not know what caused him to fall. After he fell, he looked at the sidewalk and "noticed what caught my foot," i.e., the "uneven concrete." *Id.* at 78, 80. Appellant averred that it was "obvious" to him that the concrete was uneven, and he "speculat[ed]" that the uneven concrete caused him to trip and fall. *Id.* at 83-84. He conceded, however, that he could not definitively say that he tripped on the uneven concrete.

{¶ 7} When questioned whether other pedestrians obstructed his view of the uneven sidewalk, he answered, "[n]ot that I believe." *Id.* at 72. When further asked, "[s]o there was nothing obstructing your view of the different levels in the sidewalk." Appellant replied, "[c]orrect, I guess." *Id.*

{¶ 8} Appellant further testified that after he fell, two people he did not know helped him to his feet. He walked unaided into the casino and gambled until approximately 11:00 p.m. He then reported the incident to casino management. Two days later, the casino's safety service director called him, said she was sorry he had fallen, indicated that she was aware that the area where he had fallen needed to be repaired, and told him that the casino's insurance provider would contact him.

{¶ 9} Appellant responded to appellee's motion for summary judgment on September 4, 2020. Appellant averred that appellee had failed to produce sufficient evidence demonstrating that the variation in elevation of the sidewalk at the concrete junction where he fell was less than two inches. Appellant further asserted that the hazard created by the uneven sidewalk was not readily observable, as the entire sidewalk, including the concrete junction where he fell, was of a uniform grayish color with no demarcations differentiating that junction from the adjoining junction. Appellant also claimed that circumstances attendant to the mishap created an issue of fact as to whether the uneven sidewalk was open and obvious. Specifically, appellant asserted that other pedestrians and and/or casino marketing signs and advertisements could have diverted his attention, significantly enhanced the danger posed by the uneven sidewalk, and contributed to his fall.

{¶ 10} Appellant supported his response with the deposition testimony provided by Hegenbarth on August 3, 2020. During her deposition, Hegenbarth identified several exhibits related to the March 10, 2018 incident. Exhibit 1 includes a security report prepared by casino security officer Chaz Hillmon. In that report, Hillmon noted that at approximately 11:00 p.m., appellant reported that he tripped and fell over a raised section of the sidewalk. Hillmon accompanied appellant to the area where the incident occurred and took photographs of the sidewalk. Exhibit 1 also includes a surveillance report prepared by surveillance shift supervisor Alyssa Hines. In her report, Hines noted that review of surveillance video confirmed that appellant tripped while walking on the sidewalk at approximately 2:00 p.m., that appellant showed Hillmon where he tripped and fell, and that the area of the sidewalk where the incident occurred was uneven. Exhibit 1 also includes a CD of the casino's surveillance video.

{¶ 11} Exhibit 2 includes seven photographs taken by casino personnel following the incident; the photographs depict elevation changes in the sidewalk. Exhibit 3 is a copy of Hegenbarth's July 1, 2020 affidavit. She testified that her statement in paragraph 3 of the affidavit regarding the absence of customer complaints about elevation variances in the sidewalk was focused on the area where appellant fell. Exhibit 4 is a photograph taken by Hegenbarth of the area where appellant claimed to have fallen; she took the photograph after she reviewed surveillance video of the incident. She testified, however, that she had no way of knowing the exact location of appellant's fall. She further testified that the uneven sidewalk in the area of appellant's fall was subsequently repaired. Exhibit 5 is a photograph taken by Hegenbarth depicting her measurement of the elevation change in the sidewalk. According to Hegenbarth, the elevation change measured one and one-half inches. She conceded, however, that there were different elevation changes in the sidewalk and that she could not specifically identify exactly where she took the measurement. She further testified that she had "no idea" if the specific area where she took the measurement was the area where appellant fell. (Aug. 3, 2020 Hegenbarth Dep. at 40.) Exhibit 6 is an invoice dated May 30, 2018 from a concrete repair company detailing completed sidewalk repairs.

{¶ 12} On September 11, 2020, appellee filed a reply to appellant's response. Appellee argued that Hegenbarth's failure to provide any context as to how she measured the uneven sidewalk and/or her experience in measuring sidewalks did not create an issue

of fact precluding summary judgment as to the "two-inch rule."[3]   Appellee further contended that the variation in elevation was readily observable had appellant looked where he was walking. Finally, appellee argued that appellant had failed to specifically identify the cause of his fall.

{¶ 13}  In its April 5, 2021 decision and entry, the trial court found that Hegenbarth's affidavit, deposition testimony, and photographs of the sidewalk did not establish, as a matter of law, that the two-inch rule applied; thus, summary judgment was inappropriate on that issue.

{¶ 14}  The court further found, however, that there was no genuine issue of material fact as to whether the variation in the sidewalk's elevation was open and obvious. Specifically, the court found appellant's testimony that he observed the variation in elevation subsequent to his fall established that the uneven gap in the sidewalk was visible to an ordinary observer.  The court also found appellant's testimony that he was not paying attention to where he was walking established that he had not taken proper precautionary measures to avoid the alleged hazard.  Finally, the trial court found no evidence of attendant circumstances in the case that might create an issue of fact as to whether the variation in the sidewalk's elevation was open and obvious.  For those reasons, the trial court concluded that appellee was entitled to judgment as a matter of law pursuant to the open and obvious doctrine.  Consequently, the trial court granted appellee's motion for summary judgment.

{¶ 15}  Appellant timely appeals, advancing one assignment of error:

> The trial court erred by finding as a matter of law that no genuine issue of material fact exists with respect to the application of the open and obvious doctrine.

{¶ 16}  In his sole assignment of error, appellant contends that the trial court erred in granting summary judgment to appellee based upon the open and obvious doctrine.  We disagree.

{¶ 17}  Summary judgment is appropriate under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is

---

[3] As this court noted in *Harrigill v. Thompson Concrete, Ltd.*, 10th Dist. No. 17AP-451, 2017-Ohio-9201, the Supreme Court of Ohio, in *Kimball v. Cincinnati*, 160 Ohio St.3d 370 (1953), promulgated what has now come to be known as the "two-inch rule," which provides that a difference in elevation in a sidewalk or walkway, which is less than two inches, is insubstantial as a matter of law to support a negligence claim. *Harrigill* at ¶ 11, citing *Kimball.*

entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence in a light most favorable to the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Id.* This means that "the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 18} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element or elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1997). The moving party does not discharge this initial burden under Civ.R. 56(C) by simply making a conclusory allegation that the nonmoving party had no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party cannot prevail on its claim. *Id.* If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 19} In an action for negligence, a plaintiff must prove: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Blain v. Cigna Corp.*, 10th Dist. No. 02AP-1442, 2003-Ohio-4022, ¶ 7.

{¶ 20} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 8, citing *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315 (1996). Ohio adheres to the common-law classifications of invitee, licensee, and trespasser. *Carpenter v. Mt.*

*Vernon Gateway, Ltd.*, 5th Dist. No. 13CA6, 2014-Ohio-465, ¶ 19, citing *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417 (1994).

{¶ 21} There is no dispute between the parties that appellant was an invitee on appellee's premises at the time he sustained his injuries. An invitee is a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Id.*, citing *Broka v. Cornell's IGA Foodliner, Inc.*, 5th Dist. No. 12CA100, 2013-Ohio-2506, ¶ 20, citing *Gladon* at 315. The owner or occupier of the premises owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Byrd* at ¶ 9, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may occur on its premises. *Id.*, citing *Paschal.* "No presumption or inference of negligence arises from the mere occurrence of an accident or from the mere fact that an injury occurred." *Id.*, citing *Barker v. Wal-Mart Stores, Inc.*, 10th Dist. No. 01AP-658 (Dec. 31, 2001). " 'Rather, "there must be direct proof of a fact from which the inference can reasonably be drawn." ' " *Id.*, quoting *Balcar v. Wal-Mart*, 10th Dist. No. 12AP-344, 2012-Ohio-6027, ¶ 10, quoting *Parras v. Std. Oil Co.*, 160 Ohio St. 315, 319 (1953).

{¶ 22} A premises owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey,* 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. The rationale for the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that premises owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 11. Thus, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 14.

{¶ 23} " 'Open and obvious dangers' are neither hidden, concealed from view, nor undiscoverable upon ordinary inspection." *Lydic v. Lowe's Cos., Inc.*, 10th Dist. No. 01AP-1432, 2002-Ohio-5001, ¶ 10. "A person does not need to observe the dangerous condition

for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable." *Thompson* at ¶ 12, citing *Sherlock v. Shelly Co.*, 10th Dist. No. 06AP-1303, 2007-Ohio-4522, ¶ 11. "Even in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty where the plaintiff could have seen the condition if he or she had looked." *Id.*, citing *Lydic.*

{¶ 24} "In most situations, whether a danger is open and obvious presents a question of law." *Szerszen v. Summit Chase Condos.*, 10th Dist. No. 09AP-1183, 2010-Ohio-4518, ¶ 10. "However, under certain circumstances, disputed facts may exist regarding the openness and obviousness of a danger thus rendering it a question of fact. Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Id.*, citing *Klauss v. Marc Glassman, Inc.,* 8th Dist. No. 84799, 2005-Ohio-1306, ¶ 18. "However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Id.* "Accordingly, the determination of the existence and obviousness of a danger alleged to exist on premises requires a review of the facts of the particular case." *Id.*

{¶ 25} Here, the trial court found, and we agree, that the photographic evidence demonstrates that the uneven sidewalk was an open and obvious defect, as it was not hidden, concealed from view, or undiscoverable upon ordinary inspection. Appellant argues that because the trial court concluded that the photographic evidence created an issue of fact regarding the two-inch rule, the trial court improperly cited to that evidence as a basis for concluding that the defect was open and obvious.

{¶ 26} Initially, we note that the trial court did not base its conclusion regarding the two-inch rule exclusively on the photographic evidence. Rather, the trial court found that Hegenbarth's affidavit and deposition testimony, along with the photographic evidence, did not establish as a matter of law that the two-inch rule applies. Further, differences in the sidewalk's elevation for purposes of the two-inch rule is an issue separate from that regarding whether the defect is open and obvious. We agree with the trial court that "the failure of the evidence to concretely establish the height of the gap in the sidewalk does not create a triable issue" as to the open and obvious doctrine. (Apr. 5, 2021 Decision & Entry at 5.) As noted above, open and obvious dangers are those not hidden, concealed from view,

or undiscoverable upon ordinary inspection. Here, the photographs demonstrate that variations in the sidewalk's elevation were not concealed, hidden from view, or undiscoverable upon ordinary inspection. Further, during his deposition, appellant testified that there was nothing blocking his view of the sidewalk. He also testified that he noticed the uneven sidewalk after he fell. Indeed, when asked "when you looked at the uneven concrete, it was obvious to you that the concrete was uneven. Correct?" Appellant replied, "[y]es, after I fell, I looked at it." (Simms Dep. at 84.) When again asked, "[a]nd when you looked at the concrete, it was obvious, correct, yes or no, the unevenness of it?" Appellant responded, "I guess." *Id.* We agree with the trial court that the photographs and appellant's testimony that he observed the variation in elevation subsequent to his fall established that the uneven gap in the sidewalk was not concealed, hidden from view, or undiscoverable to an ordinary observer.

{¶ 27} As further noted by the trial court, appellant also had an affirmative duty to watch where he was walking. *Conrad v. Sears, Roebuck & Co.*, 10th Dist. No. 04AP-479, 2005-Ohio-1626, ¶ 10, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49 (5th Dist.1989). Although a pedestrian using a public sidewalk is not required to constantly look downward, a pedestrian is under a duty to care for their own safety as those of ordinary carefulness and prudence would observe. *Harrigill*, 10th Dist. No. 17AP-451, 2017-Ohio-9201, at ¶ 11, citing *Grossnick v. Germantown*, 3 Ohio St.2d 96, 104 (1965). As this court has noted, "a pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." *Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-749, 2009-Ohio-1555, ¶ 10. Appellant testified that he could not recall if he was looking straight ahead or down at the ground prior to the time he fell and only "believe[d]" that he was watching where he was walking when he tripped on the sidewalk. (Simms Dep. at 70.) He further testified that "[o]nce you get on the sidewalk, you really don't pay attention." *Id.* at 67. As did the trial court, we find appellant's testimony that he was not paying attention to where he was walking established that he had not taken proper precautionary measures to avoid the alleged hazard.

{¶ 28} The trial court also found no evidence of attendant circumstances that might create an issue of fact as to whether the uneven sidewalk was open and obvious. Appellant does not argue in this appeal that the trial court erred in this regard; therefore, pursuant to

App.R. 12(A)(2), we need not address this issue. *Ignash v. First Serv. Fed. Credit Union*, 10th Dist. No. 01AP-1326, 2002-Ohio-4395, ¶ 13. However, as we stand in the shoes of the trial court, we consider the arguments appellant raised in his response to appellee's motion for summary judgment as to the attendant circumstance issue.

{¶ 29} An exception to the open and obvious doctrine is the existence of attendant circumstances. *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 16. "An attendant circumstance must be so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care of an ordinary person would exercise." *Id.*, citing *Cummin v. Image Mart, Inc.*, 10th Dist. No. 03AP-1284, 2004-Ohio-2840, ¶ 10. "The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." *Id.*, citing *Barrett v. Entprise Rent-A-Car Co.*, 10th Dist. No. 03AP-1118, 2004-Ohio-4646, ¶ 14.

{¶ 30} There is no precise definition of attendant circumstances. *Mulcahy v. Best Buy Stores, LP*, 5th Dist. No. 13CAE060051, 2014-Ohio-1163, ¶ 20, citing *Carter v. Miles Supermarket*, 8th Dist. No. 95024, 2010-Ohio-6365, ¶ 18. Attendant circumstances are factors that contribute to a fall and are beyond the injured party's control. *Id.*, citing *Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. No. 2012 CA 0068, 2012-Ohio-5502, ¶ 24. "Although not an exhaustive list, attendant circumstances can include the following: poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would easily be distracted." *Jenkins* at ¶ 16, citing *Humphries v. C.B. Richard Ellis, Inc.*, 10th Dist. No. 05AP-483, 2005-Ohio-6105, ¶ 20.

{¶ 31} Appellant alleges that two attendant circumstances create a genuine issue of material fact as to whether the variation in elevation of the sidewalk was open and obvious. Appellant first alleges that the presence of other people on the sidewalk in the area where he fell was sufficient evidence of attendant circumstances to create a genuine issue of material fact.

{¶ 32} As noted above, a large volume of pedestrian traffic may constitute attendant circumstances. However, "normal traffic" of people coming in and out of an establishment is not a circumstance so significant or unusual as to rise to the level of attendant

circumstances. *Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. No. 2012 CA 0068, 2012-Ohio-5502, ¶ 26. In this case, review of the surveillance footage reveals that appellant and his girlfriend encountered only three other pedestrians on the sidewalk, which encompassed a rather large area. Appellant did not engage in conversation with the pedestrians, and the pedestrians do not appear to be acting in such a manner as to divert appellant's attention away from the sidewalk. Indeed, appellant testified that he did not believe that other pedestrians on the sidewalk obstructed his view of the uneven sidewalk, and he did not testify that the pedestrians distracted him in any way. Because there is no genuine issue of material fact as to whether the other pedestrians on the sidewalk diverted his attention, significantly enhanced the danger posed by the uneven sidewalk, and contributed to the fall, the mere presence of other pedestrians does not create attendant circumstances.

{¶ 33} Appellant also alleges that the fact that he fell at a casino, the type of establishment "not known for [ ] subtle marketing displays," created a genuine issue of material fact as to whether the variation in elevation of the sidewalk was open and obvious. (Sept. 4, 2020 Pl.'s Memo Contra at 7.) Review of the casino's surveillance footage reveals no marketing displays that could have diverted appellant's attention, significantly enhanced the danger posed by the uneven sidewalk, and contributed to the fall. Further, appellant did not testify that he was distracted by any casino-related circumstances prior to falling.

{¶ 34} In short, we find that reasonable minds could only conclude that the elevation difference in the sidewalk where appellant fell was an open and obvious danger that was not hidden, concealed from view, or undiscoverable upon ordinary inspection. We further find no evidence of any attendant circumstances that enhanced the danger to appellant and contributed to his fall. We therefore find that appellee owed no duty to warn appellant of the danger posed by the uneven sidewalk and that the trial court did not err in granting appellee's motion for summary judgment. Appellant's sole assignment of error is overruled.

{¶ 35} Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.