[Cite as *Coldren v. Northview Shopping Plaza, L.L.C.*, 2023-Ohio-1703.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

HARRY COLDREN, ET AL.,

    PLAINTIFFS-APPELLANTS,        CASE NO. 5-22-23

    v.

NORTHVIEW SHOPPING
PLAZA, LLC, ET AL.,                  O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2021 CV 0066

Judgment Affirmed

Date of Decision: May 22, 2023

APPEARANCES:

    *Timothy A. Magee* for Appellant

    *Paul R. Bonfiglio* for Appellee

**ZIMMERMAN, J.**

{¶1} Plaintiffs-appellants, Harry Coldren ("Harry") and Paulette Coldren ("Paulette") (collectively, "the Coldrens"), appeal the July 25, 2022 judgment of the Hancock County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Northview Shopping Plaza, LLC ("Northview Plaza") and John N. Steffen ("John") (collectively, "defendants"), and dismissing the Coldrens' complaint. For the reasons that follow, we affirm.

{¶2} This case stems from an incident on March 5, 2019 during which Paulette tripped and fell over a raised concrete curb located in front of the entranceway to Readmore's Hallmark ("Readmore's), a leasee of Northview Plaza. Northview Plaza is owned by John and Elaine M. Steffen ("Elaine") (collectively, "the Steffens").

{¶3} On the day of Paulette's accident, the Coldrens parked their vehicle in the handicapped-parking spot situated to the left of the front of Readmore's entrance. Paulette was injured as she stepped from the parking lot asphalt onto the sidewalk in front of her and Harry's vehicle. Specifically, Paulette tripped over the curb and "fell into the edge of the entrance door (the door to her right) and the side of the building." (Doc. No. 49). Paulette's injury occurred during daylight hours and the weather conditions that day were clear.

{¶4} The curb to the entranceway of Readmore's (and Northview Plaza) is raised approximately two-to-three inches from the level of the parking lot.  At the time of Paulette's injury, the curb was not painted or otherwise marked.  Paulette suffered serious injuries as a result of her trip-and-fall accident, including a broken arm and knee cap, and a torn earlobe.

{¶5} According to the manager of Readmore's, Debbie Chidser ("Chidser"), "the parking lot for [Northview Plaza] was re-paved" three or four years ago, which "created an approximately [two-inch] 'lip' at the edge of the parking lot where the entrance way curb cut was directly in front of the store."  (Doc. No. 49, Ex. C).  Chidser averred that "there were approximately 15 incidents of people stumbling over the lip in front of the store" in 2018 and 2019.  (*Id.*).  Chidser further averred that the "lip" was painted yellow in July 2019 as a result of the incidents and that "there have been no further incidents involving the lip since it was painted."  (*Id.*).

{¶6} Importantly, Paulette "was aware that there was a 'curb cut' directly in front of the doors to the store" "because [she] had visited the store approximately ten times in the preceding five years" and because "the parking lot markings denoted the general width of the curb cut."  (Doc. No. 49, Ex. A).  However, Paulette averred that she "was unaware that the curb cut was not level with the parking lot" because she "simply never noticed it before or the day that [she] fell."  (*Id.*).

{**¶7**} On March 3, 2021, the Coldrens filed a complaint in the trial court alleging negligence and loss of consortium against Northview, Readmore's and the Steffens, and a claim for piercing the corporate vail against the Steffens. Northview and the Steffens filed their answer on March 23, 2021.

{**¶8**} On April 26, 2021, the Coldrens voluntarily dismissed their complaint against Elaine (as a result of her death) as well as Readmore's without prejudice under Civ.R. 41(A).

{**¶9**} The defendants filed a motion for summary judgment on November 1, 2021, arguing that there is no genuine issue of material fact that the curb on which Paulette tripped is open and obvious. On December 17, 2021, the Coldrens filed a motion for leave to file a memorandum in opposition to the defendants' motion for summary judgment instanter, which the trial court granted on December 20, 2021, and the Coldrens' memorandum in opposition was filed that same day. As evidence in support of their memorandum in opposition to the defendants' motion for summary judgment, the Coldrens submitted the affidavits of Chidser and Linda Kuk ("Kuk"). In her affidavit, Kuk averred that she tripped and fell over the same curb as Paulette in April 2019. According to Kuk's affidavit, "even though [she] had been to the store a number of times," she "never noticed the 'ledge' * * * ." (Doc. No. 49, Ex. B).

{¶10} On January 3, 2022, as a result of an unsigned affidavit, the Coldrens filed a motion requesting to "supplement" their memorandum in opposition to the defendants' motion for summary judgment, which the trial court granted on January 6, 2022. Thus, the Coldrens filed a supplement to their memorandum in opposition to the defendants' motion for summary judgment on March 14, 2022. The defendants filed their reply to the Coldrens' memorandum on April 11, 2022.

{¶11} On July 22, 2022, the trial court granted summary judgment in favor of the defendants after concluding that there is no genuine issue of material fact that the curb on which Paulette tripped is open and obvious. Furthermore, the trial court concluded that there is no genuine issue of material fact that there are no attendant circumstances that would "render the otherwise open and obvious hazard latent." (Doc. No. 56). As a result, the trial court dismissed the Coldrens' complaint on July 25, 2022. (Doc. No. 57).

{¶12} On August 22, 2022, the Coldrens filed a notice of appeal. They raise one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred as a Matter of Law in it's [sic] Application And Analysis of the 'Open and Obvious' Doctrine As it Applies To This Case.**

{¶13} In their assignment of error, the Coldrens argue that the trial court erred by granting summary judgment in favor of defendants because there is a

genuine issue of material fact the curb on which Paulette tripped was not obvious. Specifically, the Coldrens allege that photographic evidence documenting the curb; evidence of "multiple incidences of the same thing occurring"; and the evidence that Paulette and Kuk "frequented the store multiple times prior to their falls" and "neither of them ever discovering or noticing the curb lip" create genuine issues of material fact as to the obvious nature of the curb. (Appellant's Brief at 7-8).

*Standard of Review*

{¶14} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶15} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing

*Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶16} In this case, the trial court granted summary judgment in favor of the defendants after concluding that there is no genuine issue of material fact that the defendants did not breach any duty to the Paulette because "the curb is an open and obvious hazard as defined by Ohio law." (Doc. No. 56). Reaching this conclusion, the trial court found that (1) Paulette "admits that the curb was not hidden in any way"; (2) Paulette "stated that had she looked she would have seen the curb * * * "; and (3) the photographs "support that the curb is an open and obvious haward [sic]" because "[n]othing hides the view of the curb." (*Id.*). Furthermore, the trial court concluded that there are no attendant circumstances which would create a genuine issue of material fact as to whether the curb was open and obvious.

{¶17} Here, the Coldrens contend that genuine issues of material fact remain as to whether the defendants breached a duty to Paulette. *See, e.g.*, *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8 (noting that "[t]he open-and-

Case No. 5-22-23

obvious doctrine * * * concerns the first element of negligence law, the existence of a duty"). *See also id.* at ¶ 13. "'[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom.'" *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 14, quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). *See also Williams v. Lowe's of Bellefontaine*, 3d Dist. Logan No. 8-06-25, 2007-Ohio-2045, ¶ 8 ("In a slip and fall case, the court must first determine what duty of care the defendant owed the plaintiff."). "At common law, the legal duty owed by a landowner to one who enters upon his land was contingent upon the status of the entrant: trespasser, licensee, or invitee." *Carnes* at ¶ 14, citing *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417 (1994). In this case, the parties do not dispute that Paulette was a business invitee of Readmore's and the defendants.[1]

{¶18} "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong* at ¶ 5. "However, this duty does not require landowners to insure the safety of invitees on their property." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 11. "[T]he

---

[1] "'"Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner."'" *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 14, quoting *Neumeier v. Lima*, 3d Dist. Allen No. 1-05-23, 2005-Ohio-5376, ¶ 13, quoting *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986).

open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). *See also Simms v. Penn Natl. Gaming, Inc.*, 10th Dist. Franklin No. 21AP-185, 2022-Ohio-388, ¶ 22 ("A premises owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them.").

{¶19} "In general, '[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection.'" *Shipman v. Papa John's*, 3d Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 22, quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. Franklin No. 10AP-612, 2011-Ohio-2270, ¶ 12. "However, an individual 'does not need to observe the dangerous condition for it to be an "open-and-obvious" condition under the law; rather, the determinative issue is whether the condition is observable.'" *Id.*, quoting *Thompson* at ¶ 12. "Thus, '[e]ven in cases where the plaintiff did not actually notice the condition until after he or she fell, [courts have] found no duty where the plaintiff could have seen the condition if he or she had looked.'" *Id.*, quoting *Thompson* at ¶ 12. *See also Lydic v. Lowe's Cos., Inc.*, 10th Dist. Franklin No. 01AP-1432, 2002-

Ohio-5001, ¶ 10 (emphasizing that, "[e]ven in cases in which the plaintiff did not actually notice the condition until after he or she fell, * * * no duty * * * exist[s] in cases where the plaintiff could have seen the condition if he or she had looked").

{¶20} "In most situations, whether a danger is open and obvious presents a question of law." *Carnes*, 2011-Ohio-4467, at ¶ 16. *See also Klauss v. Glassman*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 18 ("Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law."). "However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Klauss* at ¶ 18. Nevertheless, "when a plaintiff is injured by an open and obvious danger, summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law." *Lang*, 122 Ohio St.3d 120, 2009-Ohio-2495, at ¶ 11.

{¶21} On appeal, the Coldrens argue that "[t]he trial court erred in focusing solely on the 'open' (not hidden from view) portion of the doctrine, failing to address whether or not the hazard in question (the approximately two to three inch curb 'lip') was 'obvious'." (Appellant's Brief at 5). In other words, the Coldrens contend that they "never asserted that the curb * * * lip was not 'open', or hidden from view,"; rather, they argue that the trial court failed to consider whether "the

hazard [was] 'obvious'" or "not deceptive." (*Id.* at 5-6). The defendants oppose the Coldrens' argument and contend that the Coldrens did not provide any "authority to show that any court anywhere has made such a distinction [regarding the open-and-obvious doctrine] nor [have they] provided any authority to show what deceptive means, how it is to be assessed or how this common curb could somehow meet that that [sic] standard and qualify as being deceptive." (Appellee's Brief at 10).

{¶22} The Coldrens' bifurcation of the elements of the open-and-obvious doctrine constitutes a distinction without a difference. Indeed, Ohio courts consistently define an open and obvious hazard in the conjunctive. That is, "[a]n open *and* obvious danger or hazard is, *by definition*, neither latent nor concealed and is discoverable upon ordinary inspection." (Emphasis added.) *Ahmad v. AK Steel Corp.*, 119 Ohio St.3d 1210, 2008-Ohio-4082, ¶ 25 (O'Donnell, J., dissenting). *See also Mohn v. Wal-Mart Stores, Inc.*, 3d Dist. Hardin No. 6-08-12, 2008-Ohio-6184, ¶ 14 ("A hazard is open and obvious when in plain view and readily discoverable upon ordinary inspection."), citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51 (5th Dist.1989) (affirming that, "where the hazard is not hidden from view or concealed and is discoverable by ordinary inspection, the court may properly sustain a summary judgment against the claimant").

{¶23} Thus, applying the legally accepted definition of an open and obvious hazard, we will begin by addressing whether the curb is an open and obvious hazard.

*Accord Carnes*, 2011-Ohio-4467, at ¶ 19; *Williams*, 2007-Ohio-2045, at ¶ 10, 18. "Determination of whether a particular hazard is open and obvious does not revolve around the plaintiff's peculiar sensibilities or whether the plaintiff actually observed the danger." *Carnes* at ¶ 19. "'Instead, the question is whether, under an objective standard, the danger would have been discernible to a reasonable person.'" *Id.*, quoting *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 08CA41, 2009-Ohio-4542, ¶ 22. "If the hazard itself is not objectively open and obvious we need not reach the issue of whether attendant circumstances 'unreasonably increased the normal risk' of the hazard." *Id.*, quoting *Williams*, 2007-Ohio-2045, at ¶ 18.

{¶24} We do not doubt that Paulette sustained significant injuries from her fall, "and we certainly do not require pedestrians to scrutinize the ground with every step they take; however, the evidence in this case is clear that the hazard * * * was open and obvious, and [the defendants] could reasonably expect customers [of Readmore's] to avoid it to protect themselves." *Williams* at ¶ 15. Stated another way, the obviousness of the risk is not an issue for a jury to determine in this case because reasonable minds cannot differ with respect to whether the curb is an open and obvious hazard. Indeed, the condition is observable. *See Thompson*, 2011-Ohio-2270, at ¶ 12 ("A person does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable.").

**{¶25}** Imperatively, the evidence in the record is undisputed concerning the visibility of the hazard. *Accord Williams* at ¶ 15. Certainly, it is "recognized that '[e]ven an obstruction that sits low to the ground in an area frequented by customers may be open and obvious as a matter of law, so long as it is not concealed.'" *Brown v. Classic Ventures Food Div., Inc.*, 8th Dist. Cuyahoga No. 84656, 2005-Ohio-112, ¶ 12, quoting *Johnson v. Golden Corral*, 4th Dist. Scioto No. 99CA2643, 2000 WL 1358635, *2 (Sept. 12, 2000).

**{¶26}** Here, Paulette testified that the curb was "not hidden in any fashion," and in "open" view. (Paulette Depo. at 36). *Compare Simms*, 2022-Ohio-388, at ¶ 26 (concluding that there was no genuine issue of material fact that the hazard was open and obvious because, in part, the appellant "testified that there was nothing blocking his view of the sidewalk"). Likewise, Paulette testified that she would have seen the curb had she looked down. (*See* Paulette Depo. at 39-40). *See Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 16 (concluding that Best Buy was entitled to summary judgment as a matter of law because, in part, "Armstrong admitted in his deposition that when he entered the store, nothing was obstructing his view prior to his fall and that, had he been looking down, he would have seen the guardrail"). Furthermore, Paulette averred that she "was aware that there was a 'curb cut' directly in front of the doors to the store" "because [she] had visited the store approximately ten times in the preceding five years" and because "the parking

lot markings denoted the general width of the curb cut." (Doc. No. 49, Ex. A). *See Armstrong* at ¶ 16.  Moreover, Paulette identified Defendant's Exhibits M, O, P, and Q as photographs depicting the condition of parking lot at issue in this case. Critically, those photographs clearly depict the variation of the height of the curb from the parking lot.

**{¶27}** Notwithstanding the observability of the curb, the Coldrens contend that it is not an open and obvious hazard since "there were other individuals who tripped over the very same curb lip." (Appellant's Brief at 8).  However, evidence that "a plaintiff or *others* may not have actually seen a danger that caused harm is insufficient to demonstrate that the hazard was latent rather than open and obvious." (Emphasis added.)  *Brown* at ¶ 15.

**{¶28}** Therefore, based on our review of the record, we conclude that the curb is an open and obvious hazard.  That is, there are no genuine issues of material fact that the curb was not hidden or concealed from view or undiscoverable by ordinary inspection.  *See Brown* at ¶ 12 (collecting cases finding "similar parking barriers and curbs to be open and obvious conditions").

**{¶29}** Furthermore, the trial court addressed whether attendant circumstances were present to obviate the open and obvious nature of the curb. Specifically, the trial court concluded that there is no triable issue as to whether attendant circumstances lessened the open and obvious nature of the curb.  Even

though the Coldrens do not raise any argument relative to attendant circumstances on appeal, we will address whether any attendant circumstances unreasonably increased the normal risk of the hazard. *Accord Simms*, 2022-Ohio-388, at ¶ 28 (noting that, even though it did not need to address the issue of attendant circumstances because the appellant did "not argue in [that] appeal that the trial court erred in this regard," the court "consider[ed] the arguments appellant raised in his response to appellee's motion for summary judgment as to the attendant circumstance issue" since the court "stand[s] in the shoes of the trial court").

{¶30} "'Attendant circumstances" may also create a genuine issue of material fact as to whether a hazard is open and obvious." *Lang v. Holly Hill Motel*, 4th Dist. Jackson No. 06CA18, 2007-Ohio-3898, ¶ 24. Attendant circumstances are "[a]n exception to the open and obvious doctrine * * * ." *Simms* at ¶ 29. However, "[t]o serve as an exception to the open and obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.'" *Shipman*, 2014-Ohio-5092, at ¶ 29, quoting *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 20.

{¶31} Nonetheless, "[t]here is no precise definition of attendant circumstances." *Simms* at ¶ 30. Generally, "'attendant circumstances are facts that significantly enhance the danger of the hazard.'" *Shipman* at ¶ 29, quoting *Haller*

*v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10. *See also Carnes*, 2011-Ohio-4467, at ¶ 17 (noting that attendant circumstances refer "'to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event'"), quoting *Benton v. Cracker Barrel Old Country Store, Inc.*, 10th Dist. Franklin No. 02AP1211, 2003-Ohio-2890, ¶ 17. Specifically, an "attendant circumstance" is "'a factor that contributes to the fall and is beyond the control of the injured party.'" *Williams*, 2007-Ohio-2045, at ¶ 18, quoting *Benton* at ¶ 17.

**{¶32}** "Attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger." *Carnes* at ¶ 17. "An attendant circumstance is usually an active event as opposed to a static condition." *Id.* When considering attendant circumstances, those "'circumstances contributing to and those reducing the risk of the defect must be considered.'" *Benton* at ¶ 17, quoting *Sack v. Skyline Chili, Inc.*, 12th Dist. Warren No. CA2002-09-101, 2003-Ohio-2226, ¶ 20. "'Although not an exhaustive list, attendant circumstances can include the following: poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would easily be

distracted.'" *Simms* at ¶ 30, quoting *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 16.

**{¶33}** Nevertheless, "'attendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner.'" *Novik v. Kroger Co.*, 3d Dist. Marion No. 9-11-21, 2011-Ohio-5737, ¶ 18, quoting *Stewart v. AMF Bowling Ctrs., Inc.*, 3d Dist. Hancock No. 5-10-16, 2010-Ohio-5671, ¶ 15.

**{¶34}** In their memorandum in opposition the defendants' motion for summary judgment, the Coldrens alleged that (1) the "layout in front of the store creates the illusion that there **is** a curb-cut to provide a level transition from the parking lot onto the sidewalk"; (2) "[a]pproaching customers' attention is naturally drawn to the doors in order to decipher how to enter the store"; and (3) "there was no paint or makings on the curb ledge to notify people that it is not a smooth transition from the parking lot up to the sidewalk and into the store." (Emphasis sic.) (Doc. No. 49).

**{¶35}** Considering each of the circumstances alleged by the Coldrens, we conclude that there is no genuine issue of material fact that attendant circumstances did not lessen the open and obvious nature of the curb. In other words, based on the facts presented, there is no triable issue as to whether Paulette was distracted from exercising the degree of care an ordinary person would have exercised to avoid the

danger. Critically, the evidence unequivocally demonstrates that Paulette abandoned her duty to look where she was walking. *Accord Carnes*, 2011-Ohio-4467, at ¶ 26. Indeed, "[t]here is a paramount duty upon a pedestrian to look where he or she is walking." *Id.* at ¶ 26. *See also Simms*, 2022-Ohio-388, at ¶ 27 (asserting that "appellant also had an affirmative duty to watch where he was walking"). In particular, "[l]edges, cracks, and lips in sidewalks and other paved surfaces are common hazards faced by millions of pedestrians each day. For this reason, pedestrians have a duty to look where they are walking." *Carnes* at ¶ 27. Consequently, contrary to the Coldrens' argument regarding the appearance of the curb, we are not persuaded that the curb is anything other than a regularly encountered, ordinary, or common circumstance.

{¶36} Importantly, Paulette testified that that she was not looking where she was walking. *Compare Simms* at ¶ 27 (concluding that "appellant's testimony that he was not paying attention to where he was walking established that he had not taken proper precautionary measures to avoid the alleged hazard"). Indeed, Paulette testified that she would have seen the curb if she was looking where she was walking. *See Lydic*, 2002-Ohio-5001, ¶ 10 ("Even in cases in which the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty to exist in cases where the plaintiff could have seen the condition if he or she had looked").

**{¶37}** Moreover, Paulette testified that she instead focused her attention on Readmore's entrance doors, which the Coldrens contend represent an attendant circumstance. *Compare Carnes* at ¶ 26 (announcing that "[i]f the pedestrian exercises the option to focus his or her attention on a garage sale rather than on the surface upon which he or she is traveling, then the pedestrian abandons the duty to look"). However, any contention that Readmore's entrance doors constitute an attendant circumstance is unavailing. Importantly, the record reveals that there is nothing unusual about Readmore's entrance doors that "would have commanded the attention of an ordinary pedestrian, and thus possibly constitute an attendant circumstance." *Id.* Notwithstanding the ordinary nature of Readmore's entrance doors, Paulette chose to focus her attention on Readmore's entrance to determine which door to enter rather than to look where she was walking. *Compare id.* (concluding that "Bethel chose to focus her attention on the garage sale to determine whether she wanted to patronize the sale" and that "Bethel's choice was completely volitional and not beyond her control"). Consequently, Paulette's decision to focus her attention on Readmore's entrance doors rather than where she was walking does not constitute an attendant circumstance. *Accord Carnes* at ¶ 26.

**{¶38}** Nevertheless, the Coldrens suggest that the absence of "paint or markings on the curb ledge" constitute an attendant circumstance because the color variation would have drawn Paulette's attention to the height differential. The

Coldrens' argument is without merit. Our sister courts of appeal have concluded that "unpainted" hazards that neither blend nor contrast with the parking lot are not an attendant circumstance. *See Rawlings v. Springwood Apts. of Columbus, Ltd.*, 10th Dist. Franklin No. 18AP-359, 2018-Ohio-4845, ¶ 35; *Esterman v. Speedway, L.L.C.*, 1st Dist. Hamilton No. C-140287, 2015-Ohio-659, ¶ 14 ("Although the concrete parking barrier was the same color as the parking lot and the sole one of its kind in the lot, parking barriers situated directly in front of a storefront * * * are safety measures regularly encountered by business invitees"). Here, the photographic evidence unequivocally demonstrates that, although unpainted, the curb contrasts with the darker coloring of the parking lot. *Accord Rawlings* at ¶ 35 ("The photographic evidence here shows the wheel stop, although unpainted, contrasted with the black pavement of the parking lot.").

**{¶39}** Furthermore, Paulette averred that she had patronized Readmore's "approximately ten times in the preceding five years" and "was aware that there was a 'curb cut' directly in front of the doors to the store." (Doc. No. 49, Ex. A). However, Paulette averred that she "was unaware that the curb cut was not level with the parking lot" because she "simply never noticed it before or the day that [she] fell." (*Id.*). Notwithstanding Paulette's particular awareness of the hazard, Paulette had an opportunity to observe the condition. *See Jackson v. Pike Cty. Bd. of Commrs.*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875, ¶ 23 (concluding that

Jackson "had an opportunity to observe the condition" since she "had traversed this same route without incident on her way into the building"). Thus, the absence of paint or markings on the curb is not an attendant circumstance that enhanced the danger to Paulette or contributed to her fall.

**{¶40}** In sum, even construing the evidence in favor of the Coldrens, we conclude that the curb is an open and obvious hazard and that there are no attendant circumstances, viewed individually or collectively, which would warrant an exception to the open and obvious doctrine. *Accord Rawlings* at ¶ 38; *Simms*, 2022-Ohio-388, at ¶ 34. As a result, there is no genuine issue of material fact that the defendants did not owe a duty to the Coldrens to warn Paulette of the danger posed by the curb. Therefore, the trial court did not err by granting summary judgment in favor of the defendants.

**{¶41}** The Coldrens' assignment of error is overruled.

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and WALDICK, J.J., concur.**

**/jlr**

Case No.  5-22-23