[Cite as *Kraczek v. Univ. of Cincinnati*, 2025-Ohio-2607.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Tammy M. Kraczek, :

    Plaintiff-Appellant, : No. 25AP-152
(Ct. of Cl. No. 2023-00762JD)

v. :

    (ACCELERATED CALENDAR)

University of Cincinnati et al., :

    Defendant-Appellee. :

---

D E C I S I O N

Rendered on July 24, 2025

---

**On brief:** *The Law Offices of Blake R. Maislin, LLC*, and *Randy A. Byrd*, for appellant.

**On brief:** *Dave Yost*, Attorney General, *Daniel J. Benoit*, and *Brian M. Kneafsey, Jr.*, for appellee. **Argued:** *Daniel J. Benoit.*

---

APPEAL from the Court of Claims of Ohio

JAMISON, P.J.

{¶ 1} Plaintiff-appellant, Tammy M. Kraczek, appeals from the December 4, 2024 judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, University of Cincinnati ("UC"). For the following reasons, we affirm the judgment of the Court of Claims.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 13, 2023, Kraczek filed a complaint in the Court of Claims against UC.

{¶ 3} Kraczek alleged that on October 6, 2022, the Hoxworth Mobile Blood Unit ("Hoxworth") bus, operated by UC, was parked near the Boone County Courthouse on Rogers Lane in Burlington, Kentucky. Kraczek was on the bus intending to donate blood.

{¶ 4}   While Kraczek was near a flight of steps on the bus, she alleged that "a Hoxworth employee[] carelessly, recklessly, and/or wantonly stepped backward toward [her], causing her to lose her balance and fall down three steps, sustaining serious injuries to . . . her lower back and coccyx." (Dec. 13, 2023 Compl. at ¶ 10.) UC allegedly breached its duties owed to Kraczek, a business invitee, "by negligently allowing and/or failing to train and/or supervise [its] employees and/or agents, regarding the necessity to pay close attention to their surroundings to avoid colliding with, contacting and/or by pushing, a business invitee." *Id*. at ¶ 36. Ultimately, Kraczek claimed that "[a]s a direct and proximate result of the negligent hiring, negligent training and/or negligent supervision by [UC], . . . Kraczek suffered serious injuries . . . to her lower back and her coccyx." *Id*. at ¶ 37.

{¶ 5}   UC filed an answer to the complaint on January 12, 2024.

{¶ 6}   On April 29, 2024, Kraczek gave a deposition in this matter. Kraczek testified that she worked in the clerk's office of the Florence office of the Kentucky Bureau of Motor Vehicles ("BMV").

{¶ 7}   On October 6, 2022, the Hoxworth bus was located at the Burlington office of the Kentucky BMV. Kraczek drove to that location to donate blood that morning. After speaking to her daughter-in-law, Kraczek went to the bus and got in line. The bus door opened and the Hoxworth employees told the people waiting that their computers were not working. They invited people to come sit on the bus.

{¶ 8}   Once on the bus, Kraczek sat in the seats near the entrance. At the time, there were three other people on the bus: (1) a man donating blood; (2) a female Hoxworth employee; and (3) a male Hoxworth employee who eventually took Kraczek's blood. A couple more BMV employees entered the bus, including Kraczek's daughter-in-law. The male Hoxworth employee stated that the computer was working and attempted to scan Kraczek's card. However, it did not scan properly. Kraczek sat back down while the male Hoxworth employee worked on the computer. She sat there for "a long time" until the computer started working. (Kraczek Dep. at 19.)

{¶ 9}   Once the computer started working, the first donor on the bus was sent back to the donation room. The male Hoxworth employee scanned Kraczek's card. He was standing in front of the stairwell working on his laptop and Kraczek stood up. Kraczek was to the right of the male Hoxworth employee and thought he would back up and let her pass.

He motioned for her, and she stood behind him so that she could walk past him. Kraczek's back was to the door of the bus. The male Hoxworth employee moved backwards. Kraczek could not recall if he made contact with her. Kraczek fell backwards down the stairs and her "butt hit the door, the bar on the door." *Id.* at 21. She did not fall down completely because the door caught her.

{¶ 10} Kraczek was able to pull herself off the door and was experiencing pain in her tailbone. She proceeded into the donation room where she gave blood. During the donation process, the male Hoxworth employee asked her how she was doing and she told him her "butt hurt." *Id.* at 24. Following her donation, Kraczek walked off the bus under her own power and drove to work. Ultimately, it was discovered that she had a fractured tailbone and a herniated disc in her lower back. Kraczek believed that Hoxworth was responsible for her injuries because "[t]here wasn't enough room on [the bus] for what they were wanting and [the male Hoxworth employee] stepped in my space. There was no direction." *Id.* at 46.

{¶ 11} A deposition of Jonell Lattimore, one of the Hoxworth employees, was scheduled for July 24, 2024.

{¶ 12} On July 16, 2024, UC filed a motion for summary judgment. In that motion, UC argued that Kraczek could not prove a prima facie case for negligence. UC contended that Kraczek could not demonstrate the existence of a dangerous condition and that the Hoxworth bus's stairs were open-and-obvious.

{¶ 13} Kraczek filed a motion in opposition to UC's motion for summary judgment on August 12, 2024. Kraczek contended that there were genuine issues of material fact for trial. More specifically, Kraczek argued that the overcrowded waiting area of the Hoxworth bus was an attendant circumstance, an exception to the open-and-obvious doctrine.

{¶ 14} UC replied to Kraczek's opposition to summary judgment by arguing that the overcrowded waiting area was not an attendant circumstance.

{¶ 15} On December 4, 2024, the Court of Claims filed a decision granting UC's motion for summary judgment. Initially, the trial court declined to consider the deposition of Lattimore because the transcript of that deposition was not filed with the court. Ultimately, the court determined that Kraczek "failed to demonstrate the existence of a genuine issue of material fact regarding the cause of her fall or attendant circumstances

precluding the application of the open and obvious doctrine to the stairs." (Dec. 4, 2024 Decision at 10.)

{¶ 16} It is from that decision that Kraczek now appeals.

## II.  ASSIGNMENTS OF ERROR

{¶ 17} Appellant assigns the following two assignments of error for our review:

> [1.] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFF BY GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
>
> [2.] THE TRIAL COURT ERRED BY FAILING TO CONSIDER THE DEPOSITION TRANSCRIPT OF JONELL LATTIMORE, WHEN THE DEFENDANT HAD WAIVED ANY OBJECTION TO THE USE OF THE UNFILED DEPOSITION TRANSCRIPT IN THE SUMMARY JUDGMENT PROCEEDINGS.

## III.  STANDARD OF REVIEW

{¶ 18} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes (1) an absence of genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party. *See, e.g.*, *State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, L.L.C.*, 2023-Ohio-1551, ¶ 8 (10th Dist.).

{¶ 19} Civ.R. 56(C) states that "[s]ummary judgment shall be rendered . . . if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, . . . timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Only facts which would be admissible in evidence can be . . . relied upon by the trial court when ruling upon a motion for summary judgment." *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 631, fn. 4 (1992). If an opposing party fails to object to the admissibility of evidence under Civ.R. 56, the court *may* but need not consider such evidence when it determines whether summary judgment is appropriate. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 473 (1998). "It is well within the trial court's discretion to ignore documents that do not comply with Civ.R. 56(C)." *Bell v. Holden Surveying*, 2002-Ohio-5018, ¶ 16 (7th Dist.).

{¶ 20} "The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Plough v. Nationwide Children's Hosp.*, 2024-Ohio-5620, ¶ 29 (10th Dist.). The moving party must point to evidence in the record affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Oliver* at ¶ 9, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Vahila v. Hall*, 77 Ohio St. 3d 421, 429 (1997).

{¶ 21} If the moving party satisfies its initial burden, then the nonmoving party "has a reciprocal burden . . . to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher* at 293. The nonmoving party must submit evidentiary material that shows the existence of a genuine dispute over the facts. *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 30 (10th Dist.). A fact is material if it might affect the outcome of the case under the applicable substantive law. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). There is a genuine dispute if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 22} An appellate court reviews a decision granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 12 (10th Dist.). "Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision." *Plough* at ¶ 31. The trial court's judgment must be affirmed if any grounds raised by the movant in the trial court support it. *Riverside v. State*, 2010-Ohio-5868, ¶ 17 (10th Dist.).

{¶ 23} It is well-established that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32. An appellate court is not only required "to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from the evidence in favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 16 (10th Dist.). "Where competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate

and such matters must be left to the trier-of-fact." *Sprouse v. Allstate Ins. Co.*, 1989 Ohio App. LEXIS 3990, *4-5 (10th Dist. Oct. 17, 1989).

## IV. LEGAL ANALYSIS

{¶ 24} For ease of discussion, we will address Kraczek's assignments of error out of order. In her second assignment of error, Kraczek alleges that the Court of Claims erred in failing to consider the deposition of Lattimore. "To be properly considered, 'a deposition transcript must be filed with the court or otherwise authenticated before it can be given the force and effect of legally acceptable evidence.' " *Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 17 (10th Dist.), quoting *Mustric v. Penn Traffic Corp.*, 2000 Ohio App. LEXIS 3032, *16 (10th Dist. Sept. 7, 2000). Here, it is undisputed that Lattimore's testimony was not filed or otherwise authenticated.

{¶ 25} Kraczek contends that because UC did not object to the use of Lattimore's deposition, UC waived any objection to the Court of Claims usage of the deposition during summary judgment proceedings. In support of her argument, Kraczek cites to several cases. However, each one of these cases state that a trial court *may*, but is not required to, consider evidence that does not comply with Civ.R. 56(C) where there is no objection. *Zapata Real Estate L.L.C. v. Monty Realty Ltd.*, 2014-Ohio-5550, ¶ 27 (8th Dist.) (non-conforming evidence "could be considered by the trial court in ruling on appellees' motion for summary judgment within the court's discretion"); *Dzambasow v. Abakumov*, 2005-Ohio-6719, ¶ 27 (8th Dist.) (trial court may, in its sound discretion, consider documents that were not properly sworn or authenticated where there is no objection); *Papadalis v. First Am. Savings Bank*, 112 Ohio App.3d 576, 579 (8th Dist. 1996) (trial court may consider documents other than those specified in Civ.R. 56(C) where there is no objection).

{¶ 26} Kraczek also cites to several cases for the proposition that failure to object at the trial court level waives error on appeal. However, the issue in these cases was whether the Court of Claims erred in considering non-conforming evidence. *David MacPherson Assocs., Inc. v. Media Marketing Advertising, Inc.*, 1983 Ohio App. LEXIS 15859 (12th Dist. July 27, 1983) (by failing to object, appellant waived the alleged error of the trial court considering an unfiled deposition); *Burkitt v. Shepherd*, 2006-Ohio-3673, ¶ 21, fn. 5 (4th Dist.) (noting that the issue of the trial court considering unfiled depositions was waived where neither party objected); *XPX Armor & Equip., Inc. v. SkyLIFE Co.*, 2020-Ohio-4498,

¶ 87 (6th Dist.) (a party's failure to object to the trial court's consideration of an unfiled deposition waives error in that regard on appeal). Here, the Court of Claims did not consider the evidence. Had the court considered the deposition and UC raised the issue on appeal, these cases would apply, but that did not occur here. As such, the cases cited by Kraczek are not relevant for our analysis.

{¶ 27} UC brings to our attention *A-M.R. v. Columbus City School Dist.*, 2015-Ohio-3781 (10th Dist.). In that case, this court found that the trial court erred in failing to consider, without explanation, excerpts from a deposition in ruling on a motion for summary judgment. *Id.* at ¶ 19. However, as UC points out, this case is distinguishable from *A-M.R.* Here, unlike the trial court in *A-M.R.*, the trial court explained why it was not considering Lattimore's deposition. Furthermore, in *A-M.R.*, information in the disregarded portions of the transcript was vital to the determination of the motion for summary judgment. *Id.* at ¶ 17-19. Here, a review of the excerpts from Lattimore's deposition reveals no information that would have changed the outcome of the motion for summary judgment. In fact, Lattimore's version of events completely contradicted Kraczek's version of events. As Kraczek correctly points out, at the summary judgment stage, all evidence is to be construed in the light most favorable to the nonmovant. (Appellant's Brief at 8.) Thus, even if the Court of Claims had considered Lattimore's deposition, it would have been required to resolve any conflicts in favor of Kraczek's version of events.

{¶ 28} In sum, it was well within the Court of Claims' discretion whether it would consider Lattimore's unfiled disposition. In ruling on a motion for summary judgment, a trial court is not required to consider an unfiled deposition that was not properly filed. *Bell*, 2002-Ohio-5018, at ¶ 22 (7th Dist.) ("a trial court is permitted to sua sponte determine that the documentation attached to the summary judgment is not in conformity with the requirements of Civ.R. 56(C)"); *see also Armaly v. Wapakoneta*, 2006-Ohio-3629, ¶ 22 (3d Dist.); *Royce v. Yardmaster, Inc.*, 2008-Ohio-1030, ¶ 36 (11th Dist.).

{¶ 29} Based on the foregoing, we find that the Court of Claims did not abuse its discretion in failing to consider Lattimore's unfiled deposition. Kraczek's second assignment of error is overruled.

{¶ 30} In her first assignment of error, Kraczek alleges that the Court of Claims erred in granting UC's motion for summary judgment. "In an action for negligence, a plaintiff must prove: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury." *Simms v. Penn Natl. Gaming, Inc.*, 2022-Ohio-388, ¶ 19 (10th Dist.). In premises liability cases, such as this one, the duty owed to the plaintiff by the owner or occupier of the premises is determined by the relationship between the parties. *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 2014-Ohio-3935, ¶ 8 (10th Dist.).

{¶ 31} In these cases, Ohio law applies the common-law classifications of invitee, licensee, and trespasser. *Simms* at ¶ 20. "An invitee is a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner." *Id.* at ¶ 21. Here, it is undisputed that Kraczek was an invitee on the Hoxworth bus.

{¶ 32} "The owner or occupier of the premises owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger." *Id.* However, there is no duty to protect an invitee from dangers on the premises that are so open-and-obvious that the invitee may be reasonably expected to discover and avoid. *Id.* Simply put, when a danger is open-and-obvious, a premises owner or occupier owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, ¶ 14.

{¶ 33} " 'Open and obvious' dangers are neither hidden, concealed from view, nor nondiscoverable upon ordinary inspection." *Lydic v. Lowe's Cos.*, 2002-Ohio-5001, ¶ 10 (10th Dist.). "A person does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable." *Thompson*, 2011-Ohio-2270, at ¶ 12 (10th Dist.). This court has found that even when a plaintiff did not actually see the dangerous condition until after his or her fall, the premises owner or occupier has no duty where the plaintiff could have seen the condition if he or she had looked. *Id.*

{¶ 34} Generally, "whether a danger is open and obvious presents a question of law." *Szerszen v. Summit Chase Condos.*, 2010-Ohio-4518, ¶ 10 (10th Dist.). The trial court may

decide this issue as a matter of law where only one conclusion can be drawn from the established facts. *Id.* "However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Id.* As such, whether a dangerous condition is open-and-obvious requires a review of the facts on a case-by-case basis. *Id.*

{¶ 35} In this case, the steps down which Kraczek fell were open-and-obvious. They were in a fixed position with no evidence of defects. Prior to her fall, Kraczek entered the Hoxworth bus via the same set of stairs. There is no evidence that the stairs' position or condition changed between the time Kraczek entered the bus and her fall. Furthermore, the door at the base of the stairs had a sign that says, "Watch Your Step." (Def.'s Ex. C.) In the stairwell, there were two red signs that said "CAUTION." *Id.*

{¶ 36} Kraczek does not appear to contest the open-and-obvious nature of the stairs. Rather, she contends that there was a genuine issue of material fact as to whether the "overcrowded waiting area" of the Hoxworth bus was an attendant circumstance, creating an exception to the open-and-obvious doctrine. (Appellant's Brief at 15.) Attendant circumstances may excuse an injured party's failure to notice an open-and-obvious hazard. *Jacobs v. Great S. Shopping Ctr., L.L.C.*, 2024-Ohio-1180, ¶ 15 (10th Dist.). "An attendant circumstance must be so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 16 (10th Dist.). Together, the attendant circumstances must have distracted the plaintiff, significantly increased the danger of the defect, and contributed to the fall. *Barrett v. Ent. Rent-A-Car Co.*, 2004-Ohio-4646, ¶ 14 (10th Dist.).

{¶ 37} In support of her attendant circumstance argument, Kraczek cites to *Whitley v. Natl. City Bank*, 2008-Ohio-131 (8th Dist.). In *Whitley*, plaintiff filed a complaint against National City Bank ("NCB") for damages due to injuries sustained when she tripped on a mat at a NCB location. *Id.* at ¶ 3. At the time of her fall, plaintiff alleged that the bank was crowded with approximately 25 customers waiting in line. *Id.* at ¶ 4. NCB had rubber backed mats placed over the carpeting. As plaintiff entered a roped-off area where customers lined up to wait for a teller, she tripped and fell, injuring her face and shoulder. *Id.* at ¶ 5. Following her fall, plaintiff observed that one of the mats' left corners was flipped

over.  *Id.*  This was not the condition the mat was in prior to her fall.  *Id.*  In her opinion, one of the other customers must have flipped it over.  *Id.*  Another witness recalled that after plaintiff fell, the witness observed that one of the mats was buckled up and tangled. *Id.* at ¶ 6.  The trial court granted NCB's motion for summary judgment.  *Id.* at ¶ 7.

{¶ 38} In finding that the trial court erred in granting NCB's motion for summary judgment, the appellate court found that there was a genuine issue of fact as to whether the attendant circumstances created conditions that made the "rumpling of the carpet" not open-and-obvious.  *Id.* at ¶ 12.  The court concluded that the mats being laid over carpeting and not tacked down were "attendant circumstances, because the crowd of people shuffling over these untacked mats increased the risk of the mats rumpling, creating a risk of the customers falling."  *Id.* at ¶ 11.  Evidence demonstrated that the condition was not open-and-obvious because plaintiff testified it was not rumpled prior to her fall, but both plaintiff and her witness noticed it was buckled and tangled after her fall.  *Id.*

{¶ 39} We find that Kraczek's reliance on *Whitley* is misplaced.  Kraczek contends that the overcrowded waiting area of the Hoxworth bus was an attendant circumstance covering up the open-and-obvious nature of the steps.  However, in *Whitley*, that court concluded that the attendant circumstances were that the mats were laid over carpet and not tacked down, not the overcrowding at the bank.  *Id.* at ¶ 11.  Moreover, in *Whitley*, the condition of the mats, which caused plaintiff's fall, changed without her noticing.  *Id.*  Here, the stairs to the bus, which Kraczek had used just prior to her fall, never changed condition or location.  It follows that *Whitley* is readily distinguishable from this case.

{¶ 40} On the other hand, this case is more comparable to *Price v. Dept. of Rehab. & Corr.*, 2014-Ohio-3522 (10th Dist.).  In *Price*, an inmate at the Hocking Correctional Facility tripped over a large chair while walking to the restroom.  *Id.* at ¶ 2.  The inmate alleged that certain attendant circumstances existed at the time of his fall, rendering the open-and-obvious doctrine inapplicable.  *Id.* at ¶ 12.  Those attendant circumstances included dim lighting caused by a power outage, crowding in the aisle near the restroom, and the inmate's bladder condition causing him to attempt to reach the bathroom quickly. *Id.* at ¶ 14.  In finding that these conditions were not attendant circumstances, this court relied heavily on the fact that the inmate had successfully traversed the hallway earlier that day, maneuvering around the chair.  *Id.* at ¶ 12, 16, 19.  Additionally, when considering the

crowded nature of the hallway, the court specifically found that "[t]he presence of a crowd in and of itself does not constitute an attendant circumstance so as to preclude the open-and-obvious doctrine." *Id*. at ¶ 19.

{¶ 41} The case at hand is similar to *Price* in several respects. First, in both cases, the plaintiffs alleged that crowding in the area of the fall was an attendant circumstance. However, a review of Kraczek's deposition reveals no evidence that the crowding played a role in her fall or prevented her from noticing the stairs. In fact, other than her allegation that a Hoxworth employee moved in her direction causing her to step back, Kraczek's testimony provides no clarity as to how her fall occurred. (Kraczek Dep. at 20-21.) The plaintiff in *Price* arguably had a stronger case than Kraczek. There, the evidence showed that four or five other inmates were in front of the *Price* plaintiff, as well as some inmates moving in the opposite direction. *Price* at ¶ 18. Here, there is no clear evidence as to how many people were on the bus at the time of Kraczek's fall. Moreover, the *Price* plaintiff alleged attendant circumstances in addition to the crowding. Here, Kraczek only points to "overcrowding" as an attendant circumstance.

{¶ 42} Second, and most important, just as the inmate in *Price* successfully navigated the hallway without falling earlier in the day, Kraczek successfully navigated the stairs just prior to her fall. Given the significance this fact played in the outcome in *Price*, it stands to reason that the same result is appropriate in this matter.

{¶ 43} It should also be noted that although Kraczek was not required to constantly look around at her surroundings, she was under "a duty to care for [her] own safety as those of ordinary carefulness and prudence would observe." *Simms*, 2022-Ohio-388, at ¶ 27 (10th Dist.). There is no evidence that other donors or Hoxworth employees were blocking Kraczek's view of the stairs if she had looked. Based on the evidence in the record, we conclude that an ordinarily careful and prudent person in Kraczek's position would have avoided the Hoxworth bus stairs. This is especially so given that Kraczek had just climbed the stairs, and the stairwell was marked with at least three warning signs.

{¶ 44} Based on the foregoing, we find that the Court of Claims did not err in granting UC's motion for summary judgment. Kraczek's first assignment of error is overruled.

## V. CONCLUSION

{¶ 45} Having overruled Kraczek's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

MENTEL and EDELSTEIN, JJ., concur.

_____