[Cite as *Copp v. Roush Honda*, 2025-Ohio-4558.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Sara J. Copp,                                          :

      Plaintiff-Appellant,                    :               No. 24AP-598
                                              (C.P.C. No. 23CV-3378)

v.                                                            :

Roush Honda et al.,                              :               (REGULAR CALENDAR)

      Defendants-Appellees.                :

---

D E C I S I O N

Rendered on September 30, 2025

---

**On brief:** *Erney Law*, and *Robert D. Erney*, for appellant.
**Argued:** *Robert D. Erney.*

**On brief:** *Gallagher, Gams, Tallan, Barnes, & Littrell L.L.P.*,
and *M. Jason Founds*, for appellee, Rousch Honda. **Argued:**
*M. Jason Founds.*

---

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Sara J. Copp, appeals a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendant-appellee, Roush Honda ("Roush"). For the following reasons, we reverse that judgment and remand this matter for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 20, 2021, Roush replaced a tire and changed the oil on Copp's 2020 Honda Pilot. Copp waited while technicians worked on her vehicle. After the technicians completed their work, a service advisor collected Copp from the waiting room and walked with her to the service drive.

{¶ 3} The service drive is the area at Roush where customers drop off their vehicles for repairs and maintenance. Customers enter the service drive by driving through one of

the three plexiglass-paneled garage doors on one side of the building. Each garage door opens to a straight, marked drive lane that runs the length of the building. Customers park their vehicles within a drive lane and service advisors meet customers at their vehicles to discuss the needed work. Vehicles exit the service drive through garage doors on the opposite side of the building.

{¶ 4} Although Roush has three drive lanes, it only had two lanes in use on the day Copp visited. Desks for the service advisors sit to one side of the drive lanes, against the wall of the service drive. That wall also has doors to the waiting room and a cashier window.

{¶ 5} While standing in front of the cashier's window, Copp's service advisor explained to Copp the work the technicians had performed on her vehicle. The service advisor also pointed out to Copp where her vehicle was parked outside building. The service advisor then left Copp at the cashier's window so she could pay her bill.

{¶ 6} After paying her bill, Copp began walking across the service drive to a door on the other side of the building. To reach the door, Copp had to cross all three drive lanes. Copp first passed by two men standing a few steps behind her as she paid her bill at the cashier's window. Copp then began walking across the drive lanes. Approximately six seconds and nine steps later, Copp's left foot slipped on a spot of water on the floor of the middle drive lane. Copp's foot slid into a grate that ran the length of the building through the center of the middle drive lane. The grate covered a trench drain. Copp's sandal caught on the grate, which unbalanced her and caused her to fall. The fall injured Copp's foot and ankle.

{¶ 7} On May 11, 2023, Copp filed suit against Roush, alleging claims for (1) negligence for not warning her of, or protecting her from, a dangerous condition on its premises, and (2) negligent hiring, retention, training, and supervision. After conducting discovery, Roush moved for summary judgment in its favor on Copp's claims. Roush filed with its motion clips from two security videos that showed Copp's fall. Roush argued that the water Copp slipped on was an open and obvious hazard and, consequently, Roush owed Copp no duty to warn her of, or protect her from, that hazard. In her memorandum in opposition to Roush's motion for summary judgment, Copp disputed whether the water spot was open and obvious.

{¶ 8} In a decision and entry dated September 16, 2024, the trial court granted Roush's motion for summary judgment. The trial court concluded that, even construing the evidence in favor of Copp, the water on the floor was an open and obvious hazard. The existence of an open and obvious hazard negated Roush's duty of care, thus precluding a finding of negligence. The trial court also determined that Copp's claim for negligent hiring, retention, training, and supervision failed because Roush had no duty to warn Copp of, or protect her from, an open and obvious hazard.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Copp now appeals the September 16, 2024 judgment, and she assigns the following errors:

> 1. The Trial Court erred, as a matter of law, by granting Defendant-Appellee's motion for summary judgment where genuine issues of material fact exist as to whether the small, clear, water puddle was "open and obvious."
>
> 2. The Trial Court erred, as a matter of law, by granting Defendant-Appellee's motion for summary judgment where genuine issues of material fact exist as to whether attendant circumstances were present at the time of Appellant, Ms. Copp's[,] fall.
>
> 3. The Trial Court erred, as a matter of law, by granting Defendant-Appellee's motion for summary judgment on Appellant's negligent supervision and training claim where Appellee never moved for summary judgment on that claim, and where that claim is separate and distinct from the vicarious liability claim.

## III. STANDARD OF REVIEW

{¶ 10} A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 15; *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 18. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *A.J.R.* at ¶ 15. This means that an appellate court conducts an independent review, without deference to the trial court's determination.

*Schumacher v. Patel*, 2023-Ohio-4623, ¶ 16 (10th Dist.); *Coppo v. Fixari Family Dental Practice, L.L.C.*, 2022-Ohio-1828, ¶ 9 (10th Dist.).

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.*; Civ.R. 56(E). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Dresher* at ¶ 18.

**IV. ARGUMENT**

{¶ 12} By her first assignment of error, Copp argues that the trial court erred in determining, as a matter of law, that the water on the floor was an open and obvious hazard. We agree.

{¶ 13} To recover for a claim of negligence, a plaintiff must prove the existence of a duty, the defendant's breach of that duty, and the defendant's breach proximately caused the plaintiff an injury. *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10. In a premises-liability context, the duty owed by a premises owner will depend on the premises owner's relationship with the injured party. *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, ¶ 10. Ohio law classifies a person who enters onto the property of another as a trespasser, licensee, or invitee. *Gladon v. Greater Cleveland Regional Transit Auth.*, 1996-Ohio-137, ¶ 9. An invitee is a person who rightfully comes on to the premises by invitation, either express or implied, for a purpose beneficial to the premises owner. *Id.* In this case, the parties do not dispute that Copp was a business invitee of Roush.

{¶ 14} A premises owner owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203 (1985). However, under the open-and-obvious doctrine, a premises

owner "is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. The rationale behind the open-and-obvious doctrine "is that the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.*, 1992-Ohio-42, 64 Ohio St.3d 642, 644. Therefore, the premises owner may reasonably expect business invitees to discover those hazards and take appropriate measures to protect themselves. *Id.* As a result, when applicable, the open-and-obvious doctrine obviates the duty to warn about, or protect business invitees from, hazards and bars any negligence claims. *Armstrong v. Best Buy Co.*, 2003-Ohio-2573, ¶ 5.

{¶ 15} Depending on the facts of the particular case, a determination of whether a hazard is open and obvious is one of law for the court or one of fact for the jury. *George v. Miami Univ.*, 2024-Ohio-5281, ¶ 17 (10th Dist.); *accord Johnson v. Am. Italian Golf Assn.*, 2018-Ohio-2100, ¶ 16 (10th Dist.), quoting *Freiburger v. Four Seasons Golf Ctr., L.L.C.*, 2007-Ohio-2871, ¶ 11 (10th Dist.) (" '[W]hether the open-and-obvious nature of a hazard is a question of law for the court or question of fact for the jury will depend largely on the facts of each particular case.' "). Despite the nature of the inquiry, determining whether a hazard is open and obvious requires consideration of the underlying facts. *George* at ¶ 17; *Simms v. Penn Natl. Gaming, Inc.*, 2022-Ohio-388, ¶ 24 (10th Dist.). Where there is no genuine issue of material fact that a hazard is both observable and readily appreciable by an ordinary person, a court may decide, as a matter of law, that the hazard is open and obvious. *Kraczek v. Univ. of Cincinnati*, 2025-Ohio-2607, ¶ 34 (10th Dist.); *Cline v. Market St. Assocs., L.L.C.*, 2022-Ohio-3298, ¶ 20 (10th Dist.); *Simms* at ¶ 24. However, where reasonable minds could differ as to whether the hazard is observable and readily appreciable by an ordinary person, a jury must resolve the open-and-obvious question. *Kraczek* at ¶ 34; *Cline* at ¶ 20; *Simms* at ¶ 24.

{¶ 16} Open and obvious hazards are those that are neither hidden nor concealed and are discoverable by ordinary inspection. *Szerszen v. Summit Chase Condominiums*, 2010-Ohio-4518, ¶ 8 (10th Dist.); *Ruz-Zurita v. Wu's Dynasty, Inc.*, 2008-Ohio-300, ¶ 7 (10th Dist.). Whether a condition qualifies as an open and obvious hazard is determined using an objective, not subjective, standard. *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-

Ohio-5106, ¶ 18 (10th Dist.); *Szerszen* at ¶ 9. Consequently, the invitee does not actually have to observe the hazard for it to be open and obvious under the law; "[r]ather, the determinative issue is whether the condition is observable." *Lydic v. Lowe's Cos.*, 2002-Ohio-5001, ¶ 10 (10th Dist.); *accord Szerszen* at ¶ 9, quoting *Goode v. Mt. Gillion Baptist Church*, 2006-Ohio-6936, ¶ 25 (8th Dist.) (" 'It is the objective, reasonable person that must find that the danger is not obvious or apparent.' "). The crucial inquiry, therefore, is whether a reasonable person "exercising ordinary care under the circumstances would have seen and been able to guard himself against the condition." *Ruz-Zurita* at ¶ 7; *accord Zitron v. Sweep-A-Lot*, 2010-Ohio-2733, ¶ 11 (10th Dist.) (holding the same); *McConnell v. Margello*, 2007-Ohio-4860, ¶ 10 (10th Dist.) (holding the same); *Caravella v. West-WHI Columbus Northwest Partners*, 2005-Ohio-6762, ¶ 14 (10th Dist.) (holding the same).

{¶ 17} Beginning with *Lydic*, this court has stated that, "[e]ven in cases in which the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty to exist in cases where the plaintiff could have seen the condition if he or she had looked." *Id.* at ¶ 10. We apply this proposition of law in cases where the plaintiff denies seeing the hazard prior to falling, but later admits that he or she could have seen the hazard had he or she looked. *See, e.g.*, *Pickens v. Kroger Co.*, 2014-Ohio-4825, ¶ 27-29 (10th Dist.) (brown and white fluid on the floor was an open and obvious hazard where the plaintiff admitted that she would have seen it if she had been looking down before she fell); *Cooper v. Meijer Stores Ltd. Partnership*, 2007-Ohio-6086, ¶ 13 (10th Dist.) (pothole found an open and obvious hazard where the "plaintiff concede[d] that had she looked down, she could have seen the ground ahead of her [shopping] cart and spotted the pothole"); *Caravella* at ¶ 22 (water on the floor was an open and obvious hazard where, after the fall, the plaintiff admitted the floor was noticeably wet with standing water); *Cummin v. Image Mart, Inc.*, 2004-Ohio-2840, ¶ 14 (10th Dist.) (ice the plaintiff slipped on was an open and obvious danger because the plaintiff admitted it was discoverable and observable by ordinary inspection).

{¶ 18} In this case, Copp testified that she did not look down at the floor while walking across the service drive, so she did not see the spot of water that precipitated her fall. During her deposition, Copp was asked whether she could have seen the water prior to her fall if she had looked:

Q. Okay. If you had looked down you would have been able to see the water, correct?

. . .

A. I would have -- I don't know.

Q. Okay.

A. I would assume yes.

(Copp Dep. at 43.)

{¶ 19} Roush construes this testimony as an admission that Copp likely would have seen the water if she had looked down. But Roush interprets this testimony to its advantage. We must construe the evidence most strongly in favor of Copp, the nonmoving party. *See Bliss v. Manville*, 2022-Ohio-4366, ¶ 1 ("an appellate court must construe the evidence before it most strongly in favor of the nonmoving party" when reviewing a summary judgment decision); *Kraczek*, 2025-Ohio-2607, at ¶ 23 (10th Dist.) (in an appeal from a summary judgment decision, an appellate court not only construes evidence in the light most favorable to the nonmoving party but also resolves inferences that may be reasonably drawn from the evidence in favor of the nonmoving party).

{¶ 20} When asked if she would have seen the water if she looked down, Copp first answered, "I don't know." (Copp Dep. at 43.) She then said, "I would assume yes." *Id.* Construing the totality of this answer in Copp's favor, we conclude that Copp was guessing that she would have seen the water when she stated, "I would assume yes." *Id.* As her first answer indicated, she really did not know whether she would have seen the water and merely engaged in after-the-fact speculation by "assum[ing] yes." *Id.* Based on Copp's uncertainty and assumption, we cannot conclude that the water spot that caused Copp's fall was an open and obvious hazard as a matter of law.

{¶ 21} Determining whether water on a floor is an open and obvious hazard presents a special challenge because water is transparent and, thus, can be difficult to detect on ordinary inspection. On the other hand, in certain circumstances, such as a rainy day, people expect to encounter wet, slippery floors when they enter business premises. *See S.S. Kresge Co. v. Fader*, 116 Ohio St. 718, 723 (1927) ("Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor."). Consequently, if a

person would anticipate a wet floor in the circumstances in which the invitee fell, then the floor's condition constitutes an open and obvious hazard. *Jacobson v. MOM Corp.*, 2018-Ohio-3264, ¶ 12 (9th Dist.), quoting *Kraft v. Dolgencorp., Inc.*, 2007-Ohio-4997, ¶ 35 (7th Dist.) (" '[T]he presence of water on a business floor tends to be an open and obvious condition when the facts involve some expectation on the part of the invitee that water might be encountered.' "). Because a person would anticipate wet entrance floors during storms, tracked in rainwater or melted snow near the entrance of a building is an open and obvious condition for which liability does not attach. *Martin v. Giant Eagle, Inc.*, 2014-Ohio-2657, ¶ 22-23 (10th Dist.); *Pesci v. William Miller & Assocs., L.L.C.*, 2011-Ohio-6290, ¶ 16 (10th Dist.). Similarly, because a person would anticipate finding wet floors in areas adjacent to swimming pools, water on the floor in such areas is an open and obvious hazard. *Dahler v. Bally's Total Fitness*, 2015-Ohio-953, ¶ 34-35 (11th Dist.); *Nichols v. Staybridge Suites*, 2009-Ohio-1381, ¶ 29-30 (10th Dist.).

{¶ 22} Conversely, when the circumstances give little to no cause to anticipate a wet floor, then a question of fact arises as to whether the water on the floor is an open and obvious hazard. In *Schmitt v. Duke Realty, L.P.*, 2005-Ohio-4245 (10th Dist.), the plaintiff slipped and fell on water that accumulated on the floor from rain tracked in by people entering a building. *Id.* at ¶ 2. We concluded that had the water been only a few steps inside the door, the water would have been an open and obvious hazard as a matter of law. *Id.* at ¶ 18. However, we did not come to that conclusion given the distance between the door and the water. We stated:

> As the water appears farther from the door, it becomes more difficult to determine that the pedestrian should have observed the water. At some point, it is so far from the door that, as a matter of law, it cannot be deemed open and obvious. Here, with the evidence construed in [the plaintiff's] favor, the water was 15 to 20 steps inside the door. At that distance from the door, reasonable minds could differ about the open and obvious nature of the water on the floor.

*Id.* at ¶ 19. *See also Middleton v. Meijer, Inc.*, 2010-Ohio-3244, ¶ 17, 25 (2d Dist.) (question of fact as to whether a spill of liquid detergent was an open and obvious hazard where the plaintiff slipped on a puddle of detergent on the floor of a grocery store aisle); *Kraft* at ¶ 35 (question of fact as to whether a wet floor was an open and obvious hazard where the

plaintiff fell on water in an aisle in the middle of a Dollar General store that apparently came from a leak in the roof); *Niehaus v. Kroger Co.*, 2001 Ohio App. LEXIS 2638, *6-7 (10th Dist. June 14, 2001) (where the plaintiff fell in a grocery store aisle, question of fact remained regarding whether a wet floor left by a scrubbing machine was an open and obvious hazard).

{¶ 23} In this case, neither Copp nor the Roush employees knew the origin of the water that caused Copp to slip. Both Copp and Cameron Dean, Roush's general manager, speculated that air conditioning condensation from a customer's vehicle could have dripped onto the drive lane, forming the water spot Copp slipped on. Roush argues that the dripping condensation is akin to tracked-in rainwater or slush, making the wet floor an open and obvious condition.

{¶ 24} As we explained above, courts have found wet entryway floors open and obvious hazards when it is raining or snowing. Likewise, wet pool decks are open and obvious hazards given their proximity to swimming pools. In these situations, the circumstances surrounding a fall—precipitation or a pool—are universally known to cause the hazard—wet floors. Invitees thus expect slippery conditions, making the wet floors open and obvious hazards. However, there is no overwhelming nexus between vehicles and wet floors that causes invitees to naturally expect slippery conditions because vehicles are driving or parked nearby. Therefore, we cannot conclude, as a matter of law, that the water on the floor of the drive lane was an open and obvious hazard due to its potential origin.

{¶ 25} As we stated above, the crucial inquiry in determining if a hazard is open and obvious is whether a reasonable person "exercising ordinary care under the circumstances would have seen and been able to guard himself against the condition." *Ruz-Zurita*, 2008-Ohio-300, at ¶ 7 (10th Dist.). Generally, the amount of awareness and ordinary care exercised by a reasonable person varies depending on the likelihood of encountering a hazard. *Sabitov v. Graines*, 2008-Ohio-3795, ¶ 20 (8th Dist.); *Young v. Rosie's Fine Foods, Inc.*, 2007-Ohio-1329, ¶ 11 (6th Dist.). Thus, " '[a] person walking across an icy street in winter must concentrate more attention to conditions underfoot than on the same street on a bright summer day.' " *Sabitov* at ¶ 20, quoting *Green v. China House*, 123 Ohio App.3d 208, 211 (5th Dist. 1997). How much attention a reasonable person should direct to his or her surroundings under the circumstances is an extremely fact-specific analysis. *Id.* For

that reason, comparison of the facts of the case under review to the facts of previously decided open-and-obvious cases yields results of limited value. *Hissong v. Miller*, 2010-Ohio-961, ¶ 13 (2d Dist.).

{¶ 26} Generally, an invitee has a duty to watch where she is walking. *Simms*, 2022-Ohio-388, at ¶ 27 (10th Dist.). A person must walk with care reasonably proportioned to the dangers likely to be encountered, but a person is not, as a matter of law, required to constantly look down. *Konet v. Mark Glassman, Inc.*, 2005-Ohio-5280, ¶ 35 (11th Dist.); *accord Sczublewski v. Kroger Co.*, 2025-Ohio-2029, ¶ 39 (6th Dist.) ("But while a person is expected to watch where he or she is going, it is impractical to expect a person to always be looking down."); *Cline*, 2022-Ohio-3298, at ¶ 19 (10th Dist.) (holding a pedestrian "is not required to constantly look downward, but a pedestrian is under a duty to care for their own safety as those of ordinary carefulness and prudence would observe"); *Rice v. Kroger – K016 Great Lakes KMA*, 2020-Ohio-2654, ¶ 7 (6th Dist.) ("While an invitee is expected to be aware of their surroundings and look down to avoid a danger, . . . the open and obvious standard is not so strict so as to require a person to constantly be looking downward for dangers under all circumstances."); *Mullins v. Darby Homes*, 1999 Ohio App. LEXIS 3427, *4 (10th Dist. July 27, 1999) ("the average person cannot be expected to spend all his or her time looking down while walking"). Consequently, a plaintiff's failure to watch where she is walking is not alone necessarily dispositive of the open-and-obvious question. *Ellington v. JCTH Holdings, Inc.*, 2015-Ohio-840, ¶ 31 (7th Dist.); *Hissong* at ¶ 35.

{¶ 27} We recognize that we have previously stated that "[a] pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." *Lydic*, 2002-Ohio-5001, at ¶ 16 (10th Dist.). This rule is consistent with a pedestrian's duty to exercise ordinary care, which includes looking down. However, this rule is not without exception because no one has a duty to look down all the time, and hazardous conditions can appear with little warning. Consequently, whether this rule applies depends on the facts of the particular case.

{¶ 28} Here, the open-and-obvious question turns on whether the water spot on the floor was objectively observable, that is, whether a reasonable person in Copp's situation exercising ordinary care would have seen it. Roush first contends that Copp could have seen the water spot had she looked down because the spot is visible on the security video

footage. The security cameras that recorded Copp's fall were located near the ceiling of the service drive, thereby providing a bird's eye view of the entire service drive. While the video recordings from those cameras show Copp's fall, as well as the events preceding and following the fall, the recordings do not depict the scene from Copp's prospective. Consequently, although the water spot on the video recording appears darker than the tile surrounding it, we do not know if the water spot would have the same appearance to a reasonable person in Copp's situation.[1]

{¶ 29} Roush next argues that Copp had ample opportunity to observe the water spot because after paying her bill at the cashier's window, Copp "took 14 steps in a straight line over 9 seconds" before falling. (Appellee's Brief at 12.) Roush, however, ignores that Copp first had to maneuver around the two men standing behind her after she left the cashier's window. Construing the video recordings most strongly in Copp's favor, Copp actually had six seconds, in which she took nine steps, during which she potentially could have seen the water spot.

{¶ 30} We, therefore, are presented with a question: would a reasonable person exercising ordinary care look down during those critical six seconds while walking across the drive lanes? On one hand, a reasonable person might do so. After all, vehicles in need of maintenance drive and park in the drive lanes, and such vehicles can leak both oil and water. Therefore, a reasonable person might keep an eye out to avoid those slippery fluids. On the other hand, service drives are full of moving vehicles and people, and a reasonable person may decide that watching out for those potential hazards is more important than looking at the floor. We, consequently, conclude that a question of fact remains regarding whether the water spot was open and obvious.

{¶ 31} Due to the existence of a question of fact as to whether the water spot was an open and obvious hazard, we conclude that the trial court erred in granting Roush summary judgment on Copp's negligence claim. Accordingly, we sustain Copp's first assignment of error.

{¶ 32} By her second assignment of error, Copp argues that the trial court erred in granting Roush summary judgment on the negligence claim when attendant circumstances

---

[1] Because of the distance between the security cameras and floor, it is difficult to determine the size of the water spot. On the video recordings, the water spot Copp slipped on is a darker blob in the corner of one of the floor tiles. In the fall, Copp's foot smeared the water, so it appeared to cover about one-half of the tile.

existed that precluded the application of the open-and-obvious doctrine. Because we have already concluded that the trial court erred in granting summary judgment on the negligence claim, Copp's second assignment of error is moot. We thus decline to address it.

{¶ 33} By her third assignment of error, Copp argues that the trial court erred by granting Roush summary judgment on Copp's claim for negligent hiring, retention, training, and supervision. The trial court granted summary judgment on the claim for negligent hiring, retention, training, and supervision because it concluded that, as a matter of law, the spot of water that caused Copp to fall was an open and obvious hazard. We have ruled that the trial court erred in deciding the water was open and obvious. Consequently, we also rule that the trial court erred in granting summary judgment on the claim for negligent hiring, retention, training, and supervision. Accordingly, we sustain Copp's third assignment of error, but not for the reason alleged in the assignment of error.

{¶ 34} As a final matter, we must address Roush's argument that an alternative ground exists to affirm the trial court's grant of summary judgment in its favor on Copp's negligence claim. Roush argues that Copp cannot recover on her negligence claim because she presented no evidence that a Roush employee placed the water on the floor or Roush had actual or constructive notice of the water prior to Copp's fall. Although Roush raised this argument in its motion for summary judgment, the trial court did not rule on it.

{¶ 35} While a court of appeals reviews a trial court's summary judgment decision de novo, Civ.R. 56(C) "mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court." *Murphy v. Reynoldsburg*, 1992-Ohio-95, 65 Ohio St.3d 356, 360. Consequently, courts of appeal generally do not address issues raised in a summary judgment motion but not decided by the trial court. *Ohio Veterans & Fraternal Charitable Coalition, Inc. v. Charitable Mgt. & Capital Group, L.L.C.*, 2025-Ohio-1191, ¶ 52 (10th Dist.); *Starner v. Onda*, 2023-Ohio-1995, ¶ 57 (10th Dist.); *accord Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21 ("[A]n appellate court limits its review to issues actually decided by the trial court in its judgment."). Because the trial court did not rule on Roush's argument, we decline to consider it in the first instance. We leave it to the trial court to decide the merits of Roush's argument if Roush chooses to raise it on remand.

## V. CONCLUSION

{¶ 36} For the foregoing reasons, we sustain Copp's first and third assignments of error, and we overrule Copp's second assignment of error as moot. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed*;
*cause remanded.*

BOGGS, J., concurs.
DORRIAN, J., concurs in judgment only.

_____